**LAMAR ADVERTISING OF PENN, LLC, Plaintiff–Appellant— Cross–Appellee,**

v.

**TOWN OF ORCHARD PARK, NEW YORK, Defendant–Appellee— Cross–Appellant.**

**Docket Nos. 03–7287(L), 03–7335(XAP).**

United States Court of Appeals, Second Circuit.

Argued: Nov. 5, 2003.

Decided: Feb. 2, 2004.

J. Joseph Wilder, Wilder & Linneball, LLP (Laura Linneball, of counsel), Buffalo, NY, for Plaintiff–Appellant—Cross–Appellee.

Thomas Knab, Hiscock & Barclay, LLP (Leonard Berkowitz, Orchard Park, NY, on the brief), Buffalo, NY, for Defendant–Appellee—Cross–Appellant.

Before: CARDAMONE, SOTOMAYOR, KATZMANN, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Lamar Advertising of Penn, LLC ("Lamar") filed suit in August 2001, challenging a local ordinance governing the erection and maintenance of signs in the Town of Orchard Park, New York ("Orchard Park" or "the Town"), as facially unconstitutional. Lamar thereafter moved for preliminary and permanent injunctions in conjunction with its motion for summary judgment. Just prior to filing its reply to Lamar's motion for summary judgment, however, Orchard Park amended the ordinance to address some—but not all—of Lamar's constitutional claims. In light of the amendments, the United States District Court for the Western District of New York (Arcara, J.) dismissed as moot those of Lamar's claims lodged against the portions of the sign ordinance that were amended.[1]

---

1. The district court referred this case to Magistrate Judge Scott for consideration of Lamar's summary judgment motion, who issued a report and recommendation denying summary judgment. After considering the parties' objections to the report and recommendation, the district court issued an order adopting the report in full. Unless stated otherwise, we therefore refer to the Magistrate Judge's report and recommendation and the district court order adopting that report

In addition to finding some of Lamar's claims moot, the district court held that Lamar lacked standing to challenge the sign ordinance, relying on the Seventh Circuit's decision in *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Illinois,* 9 F.3d 1290 (7th Cir.1993) (holding plaintiff advertising company lacked standing to challenge local sign ordinance when the signs it sought to build were larger than permitted by a separate and unchallenged law). Finding Lamar without standing and its claims moot, the district court denied Lamar's request for injunctive relief and its motion for summary judgment. Apparently unwilling to dismiss the case in the absence of a motion from Orchard Park, even after finding that it lacked subject matter jurisdiction over Lamar's claims, the district court scheduled the case for trial.

Lamar neither proceeded to trial nor amended its complaint to assert claims against the amended ordinance. Instead, Lamar filed this appeal, challenging the district court's denial of its motion for preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1) (2000). Orchard Park cross-appeals insofar as it asks this Court to dismiss the suit for lack of subject matter jurisdiction. After determining that the scope of our appellate jurisdiction may extend to the district court's rulings on Lamar's motion for summary judgment, we hold that the district court erred in finding that Lamar lacked standing. Although we agree with the district court that some of Lamar's claims are now moot, we remand for the district court to address the merits of those claims over which a live controversy still remains. Lamar also raises, for the first time on appeal, a number of challenges to the amended provisions of the ordinance. These claims, however, are not properly before us as Lamar never amended its complaint below to include claims against the amended ordinance. Should Lamar move to amend its complaint on remand, the district court should address the merits of Lamar's claims against the amended ordinance in the first instance.

## BACKGROUND

Lamar is an "outdoor advertising business" that wants to erect billboards of varying sizes throughout Orchard Park. Standing in its way, however, are a number of provisions of Orchard Park's Zoning Code pertaining to signs ("the ordinance"), which Lamar claims are unconstitutional. *See* Orchard Park, N.Y., Code §§ 144–33 to –42 (2001). Under the version of the ordinance in effect when this suit was filed, Lamar was required to obtain a permit from a Zoning Officer prior to erecting any of its signs. Permits would be issued only if the requested signs met certain size and location requirements that varied depending upon whether the sign was to be erected in an area zoned for residential, commercial, or industrial use. Sign permits, however, would not issue unless a sign's content were limited to advertising products and services available for sale on the premises. *Id.* § 144–35(B).[2] The ordinance, in other words, permitted only on-site commercial speech, and effectively barred off-site commercial speech and

and recommendation collectively as the decision of the district court.

**2.** Section 144–35(B) of the ordinance provided as follows:

Permitted sign copy. A sign may contain only the name and/or nature of the business conducted and/or the primary goods sold or the services rendered on the premises. Signs not advertising a business conducted, service rendered or primary goods sold on the premises of the sign are prohibited.

signs bearing non-commercial speech. If a requested sign met these size, location and content restrictions, the permit would issue upon the payment of a fee of twenty dollars plus one dollar for every square foot of sign space.

Some categories of signs, however, were given different treatment. No permit, for example, was required for "for sale," "for rent," or "sold" signs, or for "[c]hurch, school or other exterior institutional bulletin boards." *Id.* § 144–35(D), (E). Other signs, such as those with flashing lights or those attached to utility poles or trees, were prohibited outright.[3] *Id.* § 144–36. Still other categories of signs, including marquees and time and temperature signs, could be erected only upon the approval of Orchard Park's legislative body, the Town Board. *Id.* § 144–35(H), (I). Nowhere in the ordinance was there a statement of legislative purpose. Orchard Park's Municipal Zoning Code, however, did contain a severance clause pertaining to all the Code's provisions. *Id.* § 1–5.

Prior to filing suit, Lamar submitted permit requests for eight signs. The signs Lamar proposed were to measure 14 by 48 feet, well in excess of the ordinance's size limits for freestanding and pedestal signs. *Id.* § 144–38(B), (C). Lamar's permits unsurprisingly were denied, because the signs were too big.[4] Lamar thereafter filed suit under 42 U.S.C. § 1983 (2000), claiming that the sign ordinance was facially unconstitutional. Specifically, Lamar argued that the ordinance violated the First Amendment because (1) it was unsupported by a legitimate government purpose; (2) it discriminated between and among signs bearing commercial and non-commercial speech; (3) it was vague; (4) it left too much discretion over the approval of certain signs to the Town Board; and (5) it conditioned speech on the payment of an excessive fee. Lamar further claimed that, despite the Zoning Code's severance clause, the unconstitutional provisions could not be severed from the lawful ones without producing results that Orchard Park's Town Board never intended. Accordingly, Lamar asserted that Orchard Park's entire sign regulating scheme should be declared unconstitutional and that the Town should be enjoined from interfering with its erection of signs. Shortly after filing suit, Lamar moved for summary judgment, and for preliminary and permanent injunctions.

In its opposition to Lamar's motions, Orchard Park conceded that its sign ordinance—at least in some respects—was unconstitutional in light of prior decisions from the Supreme Court and this Court pertaining to sign ordinances. *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality); *National Adver. Co. v. Town of Babylon,* 900 F.2d 551, 556–57 (2d Cir.1990); *National Adver. Co. v. Town of Niagara,* 942 F.2d 145, 147 (2d Cir.1991). In February 2002, therefore, the Town Board met and amended the ordinance in order "to give the Town an opportunity to defend the Town's position in Federal Court." The amendments added to the ordinance a list of nine purposes, ranging from the preservation of the Town's aesthetic value to the reduction of distractions

---

**3.** At one point, Orchard Park's sign ordinance contained an explicit prohibition on certain political signs. Although Lamar's arguments make reference to the prohibition on political signs, we find this provision of little consequence as it was repealed before this lawsuit was filed.

**4.** Lamar's permit requests were all denied with the following written explanation: PERMIT DENIED. MAX–SIZE OF A PEDESTAL SIGN IS 40 SQ. FT., 16 FT. HIGH. NO PROVISION IN ORDINANCE FOR BILLBOARD SIGNS.

that lead to traffic accidents. Furthermore, the ordinance's section permitting only on-site commercial advertising— § 144–35(B)—was repealed. In its place, the Town enacted a separate provision to prohibit all "billboards," *id.* § 144–36(A)(8), and elsewhere defined the term "billboards" as, effectively, any sign advertising goods or services not sold or provided on the premises, *id.* § 144–5. The Town, however, also added a specific provision permitting the posting of signs bearing non-commercial messages on any sign otherwise authorized by the ordinance. *Id.* § 144–33(B).

No change, however, was made to the ordinance's size and location restrictions, or to the fee payment provisions. Nor were definitions added for some of the terms—such as "banner" and "bulletin board"—that Lamar claimed were unconstitutionally vague.

In light of these amendments, the district court held that the repeal of § 144–35(B)—which forbade the posting of signs containing off-site commercial advertising and non-commercial messages—mooted Lamar's claims insofar as they pertained to that section. Lamar's claims premised on the absence of a statement of legislative purpose were also deemed moot. The district court further denied Lamar's motion for summary judgment on its claim that the fees charged constituted an unlawful tax upon its first amendment rights, finding that Lamar had not shown that the fees charged exceeded the costs of administering and enforcing the ordinance.

The district court left unaddressed Lamar's claims that (i) the ordinance gives "unbridled discretion" over the approval of some signs, such as marquees and time and temperature signs, to the Town Board, and (ii) some of the ordinance's undefined terms are unconstitutionally vague. The court did not leave these claims alive, however, as it held, in the alternative, that Lamar lacked standing to challenge any part of the sign ordinance. Following the Seventh Circuit's decision in *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Illinois,* 9 F.3d 1290 (7th Cir.1993), the district court reasoned that, because Lamar's signs were larger than those permitted by the ordinance's size restrictions—which the district court held were lawful and severable from the remainder of the ordinance—Lamar would never be able to erect the signs for which it submitted permits. On that basis, the district court held that Lamar had failed to show that its injuries were redressable through this litigation; thus, Lamar was without a requisite element of Article III standing.

Despite finding that Lamar lacked standing, the district court did not enter a final judgment against Lamar but merely denied Lamar's motion for summary judgment and request for injunctive relief. It then set a trial date.[5] Although Lamar indicated at a pre-trial conference that it intended to amend its complaint to add claims against the amended sections of the ordinance, it never did so. Instead, Lamar appeals from the denial of injunctive relief pursuant to 28 U.S.C. § 1292(a)(1). Orchard Park cross-appeals only insofar as it asks this Court to affirm the district court's decision on mootness and standing, and dismiss the case for lack of subject matter jurisdiction. Though the parties expend significant energy on appeal debating the merits of Lamar's claims against the ordinance—both before and after amendment—our decision addresses only

---

**5.** The district court later adjourned the trial date after being informed by counsel that this appeal had been taken.

the district court's rulings on mootness and standing.

## DISCUSSION

### I. Appellate Jurisdiction

We must deal at the outset with the question of what issues properly are within our jurisdiction on appeal. Because there was no final judgment below and Lamar never sought certification of an interlocutory appeal under 28 U.S.C. § 1292(b), Lamar appeals only from the denial of its motion for a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1).[6] Orchard Park argues that the scope of our review, therefore, is limited to whether the district court abused its discretion in denying Lamar's request for preliminary injunction, and that we cannot revisit the district court's summary judgment rulings on standing and mootness. We disagree.

 Although a district court's ruling on summary judgment is ordinarily not appealable absent a final judgment, we have held that, where our jurisdiction is properly founded upon the district court's ruling on a preliminary injunction under 28 U.S.C. § 1292(a)(1), our review "extends to 'all matters inextricably bound up with the [preliminary injunction].'" *SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 86–87 (2d Cir. 2002) (quoting *SEC v. Black*, 163 F.3d 188,

194 (3d Cir.1998)) (asserting jurisdiction over partial summary judgment ruling that certain assets could be liquidated and distributed as part of a receivership estate, where the basis for appellate jurisdiction was the district court's modification of a prior preliminary injunction unfreezing the estate for distribution); *see also Swint v. Chambers County Comm'n*, 514 U.S. 35, 50–51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (suggesting courts of appeals may exercise pendent jurisdiction where an issue is "inextricably intertwined" with an issue over which the court properly has appellate jurisdiction, or where review of a jurisdictionally insufficient issue is "necessary to ensure meaningful review" of a jurisdictionally sufficient one); *Pathways, Inc. v. Dunne*, 329 F.3d 108, 112–13 (2d Cir.2003) (asserting jurisdiction over district court's dismissal of some of plaintiff's claims on abstention grounds where the only basis for appellate jurisdiction was district court's separate denial of preliminary injunction); *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 757–58 (2d Cir.1998) (recognizing as exception to the "absolute bar to interlocutory appeals of all issues not independently warranting immediate review" where "an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal").[7]

---

6. Had a final judgment been entered against Lamar below, that judgment would have been appealable under 28 U.S.C. § 1291. We also would have appellate jurisdiction over the district court's summary judgment order if Lamar had successfully sought certification from the district court to take an interlocutory appeal under 28 U.S.C. § 1292(b). Orchard Park does not claim, nor do we find reason to believe, that Lamar's appeal pursuant to § 1292(a)(1) was in any way intended to circumvent the district court's authority to determine whether to certify its non-final order under § 1292(b).

7. Because we conclude that the district court's rulings on summary judgment are inextricably intertwined with its denial of the preliminary injunction, we do not consider whether we could also assert jurisdiction because doing so would be "necessary to ensure meaningful review of" the issues properly on appeal. *See Merritt v. Shuttle, Inc.*, 187 F.3d 263, 269 (2d Cir.1999) (holding review of district court's rulings on subject matter jurisdiction "necessary to ensure meaningful review of" the denial of qualified immunity as the issue "goes to the very power of the district court to issue the rulings now under consideration"); *see also Rein*, 162 F.3d at

We have held that issues usually will not be considered inextricably intertwined where review of the unappealable issue is "not necessary for review of" the issue over which we have appellate jurisdiction. *See Rein,* 162 F.3d at 759 (finding, *inter alia,* issues of subject matter jurisdiction and personal jurisdiction not inextricably intertwined where court can resolve the former "without at all considering" the latter); *see also Davidson v. Chestnut,* 193 F.3d 144, 151 (2d Cir.1999) (refusing to assert jurisdiction over plaintiff's cross-appeal where "[n]one of [the cross-appealed] issues overlaps with" the issues on direct appeal).[8] Because the district court here denied Lamar's request for a preliminary injunction for the very same reasons it denied Lamar's motion for summary judgment, we find the issues of whether Lamar has standing and whether its claims are moot are indeed inextricably intertwined with the plaintiff's motion for preliminary injunction, over which we have appellate jurisdiction.[9] *Cf. Law v. Nat'l Collegiate Athletic Ass'n,* 134 F.3d 1010, 1015 (10th Cir.1998) ("In reviewing [an] injunction, we may also address the summary judgment order that served as the district court's principal legal basis for granting the injunction ....."). It is surely in the interest of judicial economy to determine now whether the federal courts continue to have subject matter jurisdic-

758 (suggesting that the "inextricably intertwined" and "necessary to ensure meaningful review" formulations amount to essentially the same inquiry). *But see Meredith v. Oregon,* 321 F.3d 807, 814–16 (9th Cir.2003) (finding district court's summary judgment rulings on abstention grounds not intertwined with denial of preliminary injunction but nevertheless asserting jurisdiction because resolving abstention issue was "necessary to ensure meaningful review of" the preliminary injunction order).

8. Other Circuits have explicated their understanding of the "inextricably intertwined" concept somewhat differently. *See, e.g., Cunningham v. Gates,* 229 F.3d 1271, 1285 (9th Cir.2000) ("[T]he legal theories on which the issues advance must either (a) be so intertwined that we must decide the pendent issue in order to review the claims properly raised on interlocutory appeal, or (b) resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue.") (internal citations omitted); *Gilda Marx, Inc. v. Wildwood Exercise, Inc.,* 85 F.3d 675, 678–79 (D.C.Cir.1996) (discussing factors to be considered when court determines whether to assert pendent jurisdiction in lieu of trying to "create a blanket rule"); *Moore v. City of Wynnewood,* 57 F.3d 924, 930 (10th Cir.1995) ("[A] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appel-

late resolution of the collateral appeal *necessarily* resolves the pendent claim as well.").

9. We find Orchard Park's reliance upon *Huminski v. Rutland City Police Department,* 221 F.3d 357 (2d Cir.2000), to argue that we lack jurisdiction over the district court's summary judgment rulings misplaced. In *Huminski,* the issue was whether we had appellate jurisdiction to review the district court's partial summary judgment ruling where the plaintiff's complaint sought preliminary and permanent injunctive relief, but the plaintiff had never moved for a preliminary injunction. *Id.* at 360. The district court had granted summary judgment to some of the defendants, and plaintiff asserted that this ruling should be construed as a denial of injunctive relief, immediately appealable under § 1292(a)(1). The question before us was whether the plaintiff could take an interlocutory appeal from the partial grant of summary judgment. After weighing a number of considerations, we held that the plaintiff could not, and dismissed the appeal for lack of jurisdiction. *Id.* at 362.

As the plaintiff here moved for a preliminary injunction, and the district court specifically denied that motion, Lamar unambiguously has the right to appeal under § 1292(a)(1), and the sole question we must answer in this regard is whether the rulings on summary judgment are sufficiently intertwined to bring them within the ambit of our pendent jurisdiction. *Huminski* does little to aid us in resolving that question.

tion over this controversy, *see Merritt v. Shuttle, Inc.*, 187 F.3d 263, 268–69 (2d Cir.1999); *Volges v. Resolution Trust Corp.*, 32 F.3d 50, 51–52 (2d Cir.1994), and we therefore find it appropriate and within our discretion to review the district court's summary judgment rulings on standing and mootness.[10] We review the district court's resolution of these issues *de novo*. *See Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 763 (2d Cir.2002).

## II. Lamar's Standing

To meet Article III's "constitutional requirements for standing, a plaintiff must allege an 'actual or threatened injury' to himself that is 'fairly traceable' to the allegedly unlawful conduct of the defendant." *Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1106 (2d Cir.1992) (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). Furthermore, and "most important for purposes of this appeal, 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *N.Y. Coastal P'ship, Inc. v. United States Dep't of the Interior*, 341 F.3d 112, 116 (2d Cir.2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560,

112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted)).

The district court found that Lamar lacked the redressability element of standing because, even if the challenged provisions of the ordinance were ruled invalid, Lamar still would not be able to erect the signs for which it had submitted permit requests. In order to reach this conclusion, the district court first held that the ordinance's provisions limiting size were severable, and thus would be unaffected by determinations concerning the constitutionality of other portions of the ordinance.

Because the size restrictions that provided the basis for denying Lamar's permit requests were deemed lawful and found to stand independent of those provisions of the ordinance Lamar challenged, the district court found this case analogous to *Harp Advertising Illinois, Inc. v. Village of Chicago Ridge, Illinois*, 9 F.3d 1290 (7th Cir.1993), in which the Seventh Circuit held that a plaintiff billboard advertiser lacked standing where the only signs it manifested an intent to build were larger than those permitted by a separate ordinance that the plaintiff did not claim was invalid.[11] *Id.* at 1291–92. Whether we

---

**10.** The discussion that follows, however, is limited to those issues only, and we express no opinion on the district court's resolution, in dicta, of the merits of Lamar's first amendment arguments. *Cf. Pathways*, 329 F.3d at 112–115 (recognizing § 1292(a)(1) jurisdiction over denial of preliminary injunction and pendent jurisdiction over the district court's dismissal of certain claims on abstention grounds, but reviewing only abstention dismissal). We also decline to exercise jurisdiction over that aspect of the district court's ruling denying summary judgment to Lamar on its claim against the fee provisions.

**11.** Similar to the plaintiff in *Harp Advertising*, Lamar has not articulated a specific challenge to the provisions of the ordinance regulating the size of signs. Nor is this a case in which the plaintiff claims that the tandem effect of

the size restrictions and other separate ordinances or provisions is to suppress unconstitutionally its protected speech. We note, however, that the Seventh Circuit has distinguished *Harp Advertising* in just such a case. *See North Ave. Novelties, Inc. v. City of Chicago*, 88 F.3d 441, 443 (7th Cir.1996).

In *North Avenue Novelties*, the plaintiff adult entertainment company challenged a municipal ordinance prohibiting the operation of adult-oriented businesses within certain distances of, *inter alia*, schools and places of worship. *Id.* The district court, following *Harp Advertising*, ruled that the plaintiff lacked standing because, even if these provisions were invalidated, the plaintiff would be barred from operating its business under a separate ordinance prohibiting so-called "adult uses" in districts zoned as Planned

would agree with the Seventh Circuit's holding in *Harp Advertising*, were we presented with those same facts, is a question we need not address, as we find the instant case sufficiently distinguishable to find that Lamar has established that its claims are redressable.

The plaintiff in *Harp Advertising* was exclusively interested in building a 1,200 square foot sign where no sign larger than 200 square feet was permitted, and "for all [the Seventh Circuit could] tell, [the plaintiff had] no interest in erecting anything smaller anywhere in the United States, let alone a sign of 199 square feet in Chicago Ridge, Illinois." *Id.* at 1292–93. Lamar, by contrast, clearly set out in its complaint that the permits it requested were part of a multi-phase plan to build signs of differing sizes throughout commercial and industrial zones in Orchard Park. Among the signs Lamar's complaint states an intent to build are "fifty (50) Eight Sheets," which are described as two-sided signs measuring 6 by 12 feet, or 72 total square feet. Section 144–38.1(A)(2) of Orchard Park's sign ordinance expressly provides for the erection of two-sided signs, albeit only in industrial zones, measuring up to 80 square feet per side. Thus, even were we to agree with the district court that the size provisions should be considered apart from all the other provisions of the ordinance and upheld, it is simply not the case—as it was in *Harp*

*Advertising*—that the plaintiff "could not put up its sign[s] even if it achieved total victory in this litigation." *Harp Advertising*, 9 F.3d at 1291.

Orchard Park argues that, despite Lamar's intent to put up at least some signs that would comply with the ordinance's size restrictions, Lamar lacks standing because it never submitted permit requests for those signs. That Lamar only sought permits for those signs that were larger than the size allowed, however, is of little consequence; Lamar need not have first sought and been denied *any* permit prior to filing a facial challenge. *See Nat'l Adver. Co. v. Town of Babylon*, 703 F.Supp. 228, 232–33 (E.D.N.Y.1989), *aff'd in relevant part*, 900 F.2d at 555 (holding plaintiff "was not required to exhaust administrative remedies since it challenged the ordinances as facially invalid"); *see also MacDonald v. Safir*, 206 F.3d 183, 189 (2d Cir.2000) ("[T]here is no need for a party actually to apply or to request a permit in order to bring a facial challenge to an ordinance (or parts of it) . . . .") (relying upon *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)); *Charette v. Town of Oyster Bay*, 159 F.3d 749, 757 (2d Cir.1998) ("[Making] no effort to apply for a permit . . . . does not, of course, deprive [plaintiff] of standing to assert that the [zoning ordinance] is facially invalid . . . .").[12]

Manufacturing Districts. *Id.* Although the plaintiff had not clearly articulated a challenge to this second provision, the Seventh Circuit construed the plaintiff's complaint liberally as a challenge to "Chicago's *overall* scheme of limiting adult uses to certain specified areas," *id.* at 444 (emphasis added), encompassing claims against both provisions that stood in the way of the operation of its business.

We do not read Lamar's complaint to claim that the size provisions work as part of an overall scheme to suppress speech protected

by the First Amendment. Rather, Lamar only claims that the size restrictions are invalid because they are not severable from other unlawful provisions. The Seventh Circuit's distinguishing of *Harp Advertising* in *North Avenue Novelties*, although noteworthy, is likely not helpful to Lamar's standing claim.

12. Because we find that Lamar's standing to bring this facial challenge is not defeated by its not having submitted permit requests for signs that would have met Orchard Park's size restrictions, we need not address the par-

Were Lamar to succeed on the merits of its claims, it likely would be able to erect at least some of the signs it has asserted an intent to build, even if the size restrictions were held valid and severable. The district court, therefore, erred in concluding that Lamar had not established that its injuries were redressable. We hold that Lamar has standing.

We find it unnecessary, in light of our reasoning, to review that portion of the district court's decision addressing the severability of the ordinance's provisions, because we find Lamar would have standing even assuming *arguendo* that the size provisions are lawful and severable.[13] In reversing the district court's decision on standing, we thus also vacate its ruling on severability, as that discussion is rendered superfluous in light of our holding. Should Lamar prevail on any of its arguments that parts of the ordinance are invalid, the district court should then revisit the issue of severability and ask again "whether the Legislature 'would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether.'" *Greater N.Y. Metro. Food Council, Inc. v. Giuliani*, 195 F.3d 100, 110 (2d Cir.1999) (quoting *In re N.Y. State Superfund Coalition, Inc. v. New York State Dep't of Envtl. Conservation*, 75 N.Y.2d 88, 94, 550 N.Y.S.2d 879, 550 N.E.2d 155 (1989)); *Niagara*, 942 F.2d at 147–48 (finding existence of severability clause in sign ordinance relevant but not determinative).

### III. Mootness of Lamar's Claims

Having concluded that Lamar has standing to bring its claims, we must determine whether the district court properly held that at least some of its claims are moot in light of the amendments Orchard Park made to the ordinance subsequent to the filing of this action. The district court dismissed as moot Lamar's claims against the now-repealed § 144–35(B), which restricted the content of signs to on-site commercial advertising and barred all non-commercial signs, as well as Lamar's claims against the ordinance for failing to contain a statement of legislative purpose, since the amendments added just such a statement. On appeal, Lamar argues that the amendments did not moot its claims because, absent a judgment that the pre-amended ordinance is unconstitutional, Orchard Park is conceivably free to re-enact the offending provisions at any time, and because Lamar acquired vested rights under the pre-amended version of the ordinance. We disagree with both contentions.

■■ The voluntary cessation of allegedly illegal conduct usually will render a case moot "if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Granite State Outdoor Adver., Inc. v. Town of Orange, Conn.*, 303 F.3d 450, 451 (2d Cir. 2002) (per curiam) (quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir.

---

ties' factual dispute over whether the signs for which Lamar did seek permits did in fact meet the ordinance's size restrictions pertaining to signs attached to the sides of buildings.

13. Of course, some courts have addressed the issue of severability prior to determining whether a plaintiff has standing. *See, e.g., INS v. Chadha*, 462 U.S. 919, 931–36, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *Contrac-*

tors Ass'n, Inc. v. City of Philadelphia, 6 F.3d 990, 996–98 (3d Cir.1993) ("Severing statutes to limit standing promotes the twin goals of avoiding unnecessary constitutional adjudication and sharpening the presentation of the issues."). We, however, need not, in this decision, pass upon the propriety of the district court having done so.

1996)). Where, as here, the defendant is a government entity, "[s]ome deference must be accorded to a [legislative body's] representations that certain conduct has been discontinued." *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo,* 981 F.2d 50, 59 (2d Cir.1992). Moreover, we have stated that "[c]onstitutional challenges to statutes are routinely found moot when a statute is amended." *Id.* at 61 (citing *Massachusetts v. Oakes,* 491 U.S. 576, 582, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989)).

In *Granite State,* we applied these principles of mootness to determine the effect of amendments made to a sign ordinance after the plaintiff brought a challenge to the ordinance. There, the defendant town amended its challenged sign ordinance prior to the district court's issuance of a ruling on a motion for preliminary injunction. *Granite State,* 303 F.3d at 451. The district court found that the amendments effectively mooted the request for injunctive relief. *Id.* We affirmed, finding "there is no reason to think that, having completely revised its regulations through proper procedures, the Town has any intention of returning to the prior regulatory regime." *Id.* at 451–52.

Lamar's argument that the amendments to Orchard Park's ordinance should not be deemed sufficient to moot the controversy relies upon a footnote in our decision in *National Advertising Co. v. Town of Babylon,* 900 F.2d 551, 554 n. 2 (2d Cir.1990). In *Babylon,* we considered the constitutional validity of five different municipal sign ordinances, which the district court had ruled unconstitutional either in whole or in part. *Babylon,* 703 F.Supp. at 228. While the case was on appeal, some of the defendant municipalities amended their or-

dinances in an effort to cure the unconstitutional defects. We, however, proceeded to address the merits of the appeal, stating as our reason that the "voluntary repeal of a constitutionally repugnant law does not necessarily moot challenges to it, because without a judicial determination of constitutionality the particular governing body remains free to reinstitute the law at a later date." *Babylon,* 900 F.2d at 554 n. 2 (citing *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 288–89 & n. 10, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)); *see also Nat'l Adver. Co. v. City of Fort Lauderdale,* 934 F.2d 283, 286 (11th Cir.1991) (holding controversy over sign ordinance not mooted by amendments where it was "uncertain whether the City would return the sign code to its original form if it managed to defeat jurisdiction").

*Aladdin's Castle,* the case upon which we relied in *Babylon,* was unusual, however, in that the defendant city had amended its ordinance numerous times in response to court rulings and had expressed an intent to reenact the offending provisions were the litigation to be dismissed for lack of jurisdiction. *See Aladdin's Castle,* 455 U.S. at 289 & 289 n. 11, 102 S.Ct. 1070; *see also American Legion Post 7 v. City of Durham,* 239 F.3d 601, 605 (4th Cir.2001) (distinguishing *Aladdin's Castle* on similar grounds). Moreover, in *Babylon,* it is not altogether clear that the amended versions of the challenged ordinances were ever even provided to this Court, and the appellant towns continued—even after passage of the purported amendments—to press their appeals from the district court's judgment against them, which could have been taken as an implicit concession by the towns that the amendments were not sufficient to deprive the Court of jurisdiction.[14] *Babylon,* 900 F.2d at 554 n. 2.

---

**14.** It also does not escape our attention that the discussion of mootness in *Babylon* was

relegated to a footnote. Though the court's conclusion that the controversy was not moot

We agree, nevertheless, with Lamar that the amendment or repeal of an allegedly unconstitutional legislative provision will not necessarily moot litigation already underway; however, *Harrison* holds that deference to the legislative body's decision to amend is the rule, not the exception. *See Harrison & Burrowes Bridge Constructors,* 981 F.2d at 61; *see also Catanzano v. Wing,* 277 F.3d 99, 107–08 (2d Cir.2001) (holding no error in district court's issuance of an injunction against law that already had expired where efforts were underway to reenact the provision, but nevertheless finding case moot because efforts to reenact the law were abandoned while case was on appeal); *Assoc. Gen. Contractors, Inc. v. City of New Haven,* 41 F.3d 62, 65–66 (2d Cir. 1994) (finding case mooted by expiration of the statute).[15] Mindful of the deference due the legislative body, we are hesitant to hold that a significant amendment or repeal of a challenged provision that obviates the plaintiff's claims does not moot a litigation, absent evidence that the defendant intends to reinstate the challenged statute after the litigation is dismissed, or that the municipality itself does not believe that the amendment renders the case moot.

We see nothing on this record that would lead us to believe that Orchard Park intends to return to the questionable state of affairs that existed before Lamar filed suit. Indeed, Orchard Park specifically disclaimed any plans to ever "change the ordinance back" during oral argument before the district court. Nor has Orchard Park in any way conceded that the amendments do not render the litigation moot; rather, it argues that the amendments sufficiently altered the ordinance to render Lamar's claims nugatory. According to the representations of the municipality some deference, *see Harrison & Burrowes Bridge Constructors,* 981 F.2d at 60, we therefore find the instant case is more appropriately governed by our holding in *Granite State.*[16]

Lamar attempts to distinguish *Granite State* by arguing that, whereas the *Granite State* plaintiff did "not contend that the amended sign regulations are unconstitutional, and thus there [was] no reason to believe that any unconstitutional restrictions [were] currently in place," *Granite State,* 303 F.3d at 452, Orchard Park's amended ordinance is still unconstitutional. While the amended provisions of the ordinance may present new constitutional problems, we find that Orchard Park's Town Board sufficiently overhauled the regulatory scheme to render moot La-

was jurisdictional and, therefore, necessary in resolving the merits of the appeal, we disagree with Lamar that this terse holding established a blanket rule that trumps the subsequent holding of *Granite State.*

15. *See also Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago,* 326 F.3d 924, 929–30 (7th Cir.2003) (holding controversy over ordinance pertaining to cigarette advertisement mooted by repeal); *Kentucky Right to Life, Inc. v. Terry,* 108 F.3d 637, 644 (6th Cir.1997) (finding claims against ordinance "moot to the extent those challenges are effectively nullified by the recent statutory amendments"); *Native Village of Noatak v. Blatchford,* 38 F.3d 1505, 1510 (9th Cir.1994) ("As a general rule, if a challenged law is repealed or expires, the case becomes moot. The exceptions to this general line of holdings are rare and typically involve situations where it is virtually certain that the repealed law will be reenacted." (internal citations omitted)).

16. We find no merit in Lamar's argument that Orchard Park waived any claim of mootness by making concessions before the district court that the case is controlled by *Babylon.* "[T]he condition of mootness is not a defense that could be waived by [a defendant], but rather is a condition that deprives the court of subject matter jurisdiction." *Fox v. Bd. of Trustees,* 42 F.3d 135, 140 (2d Cir.1994).

mar's claims against § 144–35(B)—which was repealed—and its claims against the ordinance as a whole for lacking a statement of purpose—which was added. Of course, a plaintiff's claims will not be found moot where the defendant's amendments are merely superficial or the law, after amendment, suffers from similar infirmities as it did at the outset. *See Northeastern Fla. Chap. of the Associated Gen. Contractors of America v. City of Jacksonville, Fla.*, 508 U.S. 656, 662, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (refusing to hold controversy is moot because changes to the law were alleged to inflict the same injuries but only to a lesser extent). We, however, are satisfied that the amendments here left the sign ordinance "sufficiently altered so as to present a substantially different controversy from the one" that existed when this suit was filed. *Id.* at 671, 113 S.Ct. 2297 (O'Connor, J., dissenting).[17] Any arguments as to the unlawfulness of the ordinance as amended should have been raised by Lamar in an amended complaint. As Lamar never made a motion to amend its complaint to the district court, none of the claims pertaining to the amendments are properly before us. *Cf. Long Island Board of Realtors, Inc. v. Village of Massapequa Park*, 277 F.3d 622, 628 (2d Cir.2002).

Finally, we disagree with Lamar's contention that the controversy over the original ordinance remains alive because Lamar incurred certain damages under the pre-amended version of the ordinance that it should still be permitted to recoup. Lamar's potential receipt of attorneys' fees, were it to be a "prevailing party" under 42 U.S.C. § 1983, is in itself not enough to keep the controversy alive. *See Lewis v. Cont'l Bank Corp.*, 494 U.S.

---

**17.** As discussed *supra*, there are several meaningful differences between Orchard Park's original ordinance and the ordinance as it exists today. First, the amended ordinance contains a statement of legislative purpose where none previously existed. Orchard Park, N.Y., Code § 144–33(A). Although Lamar argues on appeal that Orchard Park's *mere insertion of a statement of purpose is* not enough to justify the ordinance's speech restrictions, an argument that the government's proffered justifications for an ordinance are insufficient is qualitatively different *from an argument that the government has* proffered none. *Cf. Babylon*, 900 F.2d at 555–56 (invaliding sign ordinances that contained no statements of substantial government interest and where defendant towns had not offered any extrinsic evidence of such interest).

Second, we find that the amendments sufficiently altered the dividing line between what is and is not permitted, even though both versions of the ordinance may effectively curtail off-site commercial messages. The repeal of § 144–35(B) removed the outright prohibition on non-commercial speech, and, indeed, a provision was added expressly *authorizing* non-commercial messages where any sign is otherwise allowed. *Id.* § 144–33(B). Although both versions of the ordinance effectively prohibit off-site commercial speech, Lamar did not argue in its summary judgment motion below that the ordinance impermissibly discriminated against off-site commercial speech.

Further, although the amendments did not remove any of the ordinance's exceptions that Lamar claimed discriminated against some non-commercial speech in favor of other non-commercial speech, such discrimination is of a different character now that the prohibition on non-commercial speech has been repealed. *Cf. Messer v. City of Douglasville, Ga.*, 975 F.2d 1505, 1512–13 (11th Cir.1992) (recognizing constitutionally significant difference between exceptions from a general ban and exceptions from merely a permit requirement). This is not to say that we would agree that exceptions from a permit requirement for some speech or speakers raise no first amendment concerns. Indeed, that may well be one of the issues the district court will need to consider should Lamar amend its complaint. Here, however, we need only say that Orchard Park's amendments sufficiently altered the effect of the exceptions such that the controversy over how the exceptions interacted with the now-repealed § 144–35(B) is moot.

472, 480, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). Further, we find no merit to Lamar's assertion that it obtained vested rights under the pre-amended version of the ordinance. Although in *Babylon* we cited the possibility that the plaintiff obtained vested rights as another reason for not finding the case moot, there we were concerned about potential vested rights "under state law" that "might have" accrued "in the interim" between the district court's issuance of an injunction and the enactment of any curative amendments.[18] *Babylon,* 900 F.2d at 554 n. 2. Lamar fundamentally confuses the point by arguing that its case is not moot because the pre-amended ordinance infringed upon its first amendment rights and that those rights vested to it directly under the Constitution. While a party may avert mootness of its claim if it demonstrates that, prior to the amendment it accrued certain property rights or fixed expectations protected under state law, Lamar has failed to make any such showing here.[19] *See Ronsvalle v. Totman,* 303 A.D.2d 897, 757 N.Y.S.2d 134, 136–37 (3d Dep't 2003); *see also People v. Miller,* 304 N.Y. 105, 106 N.E.2d 34 (1952); *People ex rel. Publicity Leasing Co. v. Ludwig,* 172 A.D. 71, 158 N.Y.S. 208 (1st Dep't 1916). Indeed, Lamar cites no New York law in support of its bald assertion that it obtained vested rights under the original ordinance.

■ We therefore agree with the district court's ruling on mootness and hold that Lamar's claims against § 144–35(B) and against the ordinance for lack of a statement of purpose are moot. Because none of Orchard Park's amendments addressed Lamar's claims against the ordinance based on vagueness, the allegedly excessive discretion given to the Town Board, or the fee provisions, these claims, however, are not moot.

## CONCLUSION

Contrary to the district court, we hold that Lamar has standing to challenge Orchard Park's sign ordinance and, therefore, VACATE the district court's rulings on standing and severability. We, however, AFFIRM the district court's ruling on mootness and hold that Lamar's claims directed at § 144–35(B) and its claims against the ordinance for lacking a statement of legislative purpose are moot.

**18.** Contrary to Lamar's arguments on appeal, we did not in *Babylon* hold that the plaintiff had in fact obtained vested rights under state law. Rather, we mentioned the possibility that the plaintiff "might have" obtained vested rights as another reason counseling in favor of recognizing the persistence of a live controversy.

**19.** Nor can we agree that if Orchard Park's original ordinance had in fact been unconstitutional all along that Lamar obtained vested rights because it should have been able to erect its signs in the absence of a lawful ordinance that would have kept it from so doing. *Cf. Preble Aggregate, Inc. v. Town of Preble,* 263 A.D.2d 849, 694 N.Y.S.2d 788, 792–93 (3d Dep't 1999) (rejecting plaintiff's claim that it had vested rights in a permit after the lower court ruled invalid provision that formed the basis for government's denial of the permit). No rights in the construction of signs or to the receipt of permits necessarily would have vested absent some detrimental reliance on Lamar's part. *See id.* Even in the absence of a lawful ordinance regulating signs, the municipality may have had residual authority to disallow signs or decline permits for reasons of safety and aesthetic concerns. *Cf. Nat'l Adver. Co. v. City and County of Denver,* 912 F.2d 405, 412 (10th Cir.1990) (holding that enactment of a new sign ordinance mooted the controversy as to the original ordinance because, even assuming the plaintiff advertiser had been entitled permits requested while the original ordinance was in effect, any permits granted under the original ordinance would have been immediately revocable upon enactment of the new ordinance).

Lamar's other claims against the ordinance for vagueness and for leaving unbridled discretion in the Town Board remain viable, because Lamar has standing to assert them, and they are not moot. Because the district court never ruled on the merits of those claims, we express no opinion on the merits of those claims. Nor do we express an opinion on the district court's denial of summary judgment on Lamar's claim against the ordinance's fee provisions, as we decline to exercise jurisdiction over that issue.[20]

To summarize, Lamar's complaint initially challenged Orchard Park's sign ordinance on the following grounds: 1) the ordinance was unconstitutional because it lacked a statement of legislative purpose; 2) the ordinance—through § 144–35(B)—favored commercial speech over non-commercial speech, and the exceptions to the permit requirement therefore permitted some non-commercial speech and prohibited other non-commercial speech; 3) the ordinance was unconstitutionally vague; 4) the ordinance left too much discretion over the issuance of certain signs in the Town Board; and 5) the requirement of a fee represented an unconstitutional tax upon its exercise of its first amendment rights. We agree with the district court that the first two of these claims are moot. On remand, the case should proceed on, at least, the remaining three claims, unless Lamar amends its complaint to assert claims against the amended provisions of the ordinance. Because we did not exercise jurisdiction over the district court's denial of summary judgment to Lamar on the fifth claim, pertaining to fees, that aspect of the decision is left undisturbed.

We, therefore, REMAND for further proceedings consistent with this decision and to give Lamar an opportunity, if it so chooses, to amend its complaint to assert claims against the amended provisions of the ordinance. If Lamar should amend its complaint to assert claims against the amendments to the ordinance, the district court should carefully consider whether and how the new ordinance, on its face, unlawfully discriminates against and among different categories of commercial or non-commercial speech. Should this Court be called upon to review the merits of this case at some point in the future, we will benefit from a more developed record and a careful evaluation of the amended ordinance in light of the first amendment principles that have animated prior cases involving sign ordinances. *See, e.g., City of Ladue v. Gilleo*, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Linmark Associates v. Township of Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); *Long Island Bd. of Realtors, Inc. v. Village of Massapequa Park*, 277 F.3d 622 (2d Cir.2002); *National Adver. Co. v. Town of Niagara*, 942 F.2d 145 (2d Cir.1991); *National Adver. Co. v. Town of Babylon*, 900 F.2d 551 (2d Cir.1990).

---

**20.** Lamar's claim against the fee provisions, of course, remains viable as there has yet to be a ruling on the merits of the claim, and defendant has not yet moved for summary judgment on that claim.