23-1224-cv
*Doe v. McDonald*

## In the
# United States Court of Appeals
## For the Second Circuit

————

August Term 2024

Argued: October 15, 2024
Decided: February 12, 2025

Docket No. 23-1124

John Doe, a fictitious name,
*Petitioner–Appellee,*

*v.*

James V. McDonald, M.D., in his official capacity as
Commissioner of Health of the State of New York,
*Respondent–Appellant,*

Anne Marie T. Sullivan, M.D., in her official capacity as
Commissioner of Mental Health for the State of New York,
*Respondent,*

Ruth Rivera, George Iwczenko, Barbara Ann Moss, M.D., Eric
Scoff,
*Intervenors–Defendants,*

Loren Berghorn, Diana Vila,
*Intervenors.*[*]

————

---

[*] The Clerk is respectfully instructed to amend the caption as set forth above.

Appeal from the United States District Court
for the Northern District of New York.

————

Before: WALKER, JACOBS, and MERRIAM, *Circuit Judges*.

————

Petitioner-Appellee John Doe sued Respondent-Appellant James V. McDonald, M.D., New York's Commissioner of Health (the "State"), and other defendants (who have not appealed), seeking declaratory and injunctive relief under the Americans with Disabilities Act, 42 U.S.C. § 12132; the Rehabilitation Act, 29 U.S.C. § 794; the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; and Article 78 of the New York Civil Practice Law and Rules. Doe, an individual with a serious mental illness, alleges that New York State regulations (the "Regulations") discriminate against him by blocking his readmission to Oceanview Manor Home for Adults, a Transitional Adult Home ("TAH") in which he previously resided. Since he filed suit, the State has allowed Doe to return to Oceanview, amended the Regulations to allow for the readmission of former TAH residents with serious mental illness, and removed Oceanview's classification as a TAH. The State moved for summary judgment on the ground that Doe lacks standing. The district court (Suddaby, *J.*) denied the State's motion. The district court granted the State leave to file an interlocutory appeal.

On appeal, the State argues that in finding standing, the district court erred because Doe lacks a concrete plan to leave and seek readmission to Oceanview. Because the State's jurisdictional challenge addresses events that occurred after Doe filed suit, it is properly assessed as a question of mootness, not standing. For the reasons that follow, we find that Doe's suit is moot and **DISMISS** the

appeal, **VACATE** the district court's order, and **REMAND** with instructions to dismiss for lack of subject matter jurisdiction.

————

> GARY J. MALONE, Constantine Cannon LLP, New York, NY (Robert L. Begleiter, *on the brief*), *for Respondent–Appellant James V. McDonald, M.D.*
>
> MICHAEL Y. HAWRYLCHAK, O'Connell and Aronowitz, Albany, NY (Jeffrey J. Sherrin, *on the brief*), *for Petitioner–Appellee John Doe.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Petitioner-Appellee John Doe sued Respondent-Appellant James V. McDonald, M.D., New York's Commissioner of Health (the "State"),[1] and other defendants (who have not appealed), seeking declaratory and injunctive relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; the Rehabilitation Act, 29 U.S.C. § 794; the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; and Article 78 of the New York Civil Practice Law and Rules. Doe, an individual with a serious mental illness, alleges that New York State regulations (the "Regulations") discriminate against him by blocking his readmission to Oceanview Manor Home for Adults, a Transitional Adult Home ("TAH") in which he previously resided. Since he filed suit, the State has allowed Doe to return to Oceanview, amended the Regulations to allow for the readmission of former TAH residents with serious mental illness, and removed Oceanview's classification

---

[1] McDonald is the current Commissioner of Health; Doe's petition originally named the former Commissioner, Howard Zucker.

as a TAH. The State moved for summary judgment on the ground that Doe lacks standing. The district court (Suddaby, *J.*) denied the State's motion. The district court granted the State leave to file an interlocutory appeal.

On appeal, the State argues that in finding standing, the district court erred because Doe lacks a concrete plan to leave and seek readmission to Oceanview. Because the State's jurisdictional challenge addresses events that occurred after Doe filed suit, it is properly assessed as a question of mootness, not standing. For the reasons that follow, we find that Doe's suit is moot and **DISMISS** the appeal, **VACATE** the district court's order, and **REMAND** with instructions to dismiss for lack of subject matter jurisdiction.

## BACKGROUND

On January 16, 2013, the New York Department of Health ("DOH") and Office of Mental Health published the Regulations. The Regulations seek to integrate homes, including TAHs, to include both disabled and non-disabled residents. They do so in part by prohibiting such homes from accepting new residents with serious mental illness until their populations become more integrated. The Regulations were implemented following separate federal litigation involving the "integration mandate" of Title II of the ADA as set forth in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), and as part of the State's larger policy to prevent the housing segregation of individuals with serious mental illness.

Doe currently resides at Oceanview Manor Home for Adults ("Oceanview"), an adult home in Coney Island previously designated

4

as a TAH.[2] In 2014, Doe moved out of Oceanview and into supported housing. Two years later, in 2016, Doe sought to return to Oceanview after this attempt to live independently failed. However, he was denied readmission pursuant to the Regulations because Oceanview was then-classified as a TAH and had not yet integrated to the point where it could accept new residents with serious mental illness. Following that denial, Doe commenced this action in New York state court on November 22, 2016, alleging that the Regulations harmed him by denying him the ability to return to Oceanview "due to his mental illness." App'x at 48.

On March 22, 2017, the federal court overseeing the enforcement of the integration settlement issued a temporary restraining order, with the State's consent, directing the State to grant Doe's request to return to Oceanview (the "TRO"). Doe returned on October 31, 2017. On November 4, 2021, Doe again attempted to move out of Oceanview, but immediately changed his mind and was allowed to return on the same day before his discharge had been processed.

On January 25, 2019, the DOH announced a provision to allow TAHs to readmit persons with serious mental illness, like Doe, on a case-by-case basis. On October 23, 2019, the State published an emergency rule providing that when a prospective resident is "a person with serious mental illness, but the individual is a former resident of a [TAH] and the [admitting facility] obtains a waiver" from

---

[2] A "transitional adult home" is "an adult home with a certified capacity of 80 beds or more in which 25 percent or more of the resident population are persons with serious mental illness." N.Y. Comp. Codes R. & Regs. tit. 18, § 487.13(b)(1). "Persons with serious mental illness" are those with "a designated diagnosis of mental illness" which "results in substantial functional disability." *Id*. § 487.2(c).

the DOH, that individual is eligible for readmission even if the TAH had not yet sufficiently integrated under the Regulations.  App'x at 214.  The rule became permanent on March 25, 2020 (the "Waiver Rule").  As of April 2024, the DOH terminated Oceanview's designation as a TAH.  Tenth Annual Report at 22 & n.28, *O'Toole v. Hochul*, No. 1:13CV04166(NGG)(ST) (E.D.N.Y. April 2, 2024), ECF No. 419.[3]

On October 29, 2021, the State moved for summary judgment on several grounds, including by challenging Doe's Article III standing.  The district court denied the State's motion on June 30, 2023.  On a certificate of appealability, the State appeals the district court's ruling that Doe has standing to maintain this action.[4]

## STANDARD OF REVIEW

Article III standing is a question of law that this court reviews *de novo*.  *Shain v. Ellison*, 356 F.3d 211, 214 (2d Cir. 2004).  "Because federal courts are courts of limited jurisdiction, if a 'court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'"  *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 299 (2d Cir. 2021) (quoting Fed. R. Civ. P. 12(h)(3)).  "In addition, we have an independent duty to consider other aspects of subject-matter jurisdiction," including mootness, *sua sponte*.  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687, 692 (2d Cir. 2013).

---

[3] At oral argument, the parties did not dispute this fact, nor did they contest our taking judicial notice of it.

[4] In orders dated July 20, 2018 and November 30, 2020 not at issue in this appeal, the district court rejected arguments by the State in its motions to dismiss that the TRO and the Waiver Rule mooted Doe's claims.  *Doe v. Zucker*, No. 1:17CV01005(GTS)(CFH), 2018 WL 3520422, at *9 (N.D.N.Y. July 20, 2018); *id.*, 2020 WL 7024386, at *5-6 (N.D.N.Y. Nov. 30, 2020).

To have standing, a plaintiff requesting forward-looking relief "must face a real and immediate threat of repeated injury." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quotation marks and citation omitted). This threat must be demonstrated "with the manner and degree of evidence required at the successive stages of the litigation"; at summary judgment, this requires specific facts "set forth by affidavit or other evidence." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotation marks and citation omitted). However, "standing is to be determined as of the commencement of suit," even for plaintiffs seeking forward-looking relief. *Id.* at 570 n.5. Therefore, "[w]hile the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (citations omitted).

## DISCUSSION

The parties have treated the relevant inquiry in this appeal as solely one of standing. The jurisdictional objections raised by the State, however, are instead properly addressed through a mootness inquiry. Standing is determined as of the filing of the complaint. It is uncontested that Doe had the requisite stake in the outcome of this litigation when he filed suit and was being excluded from Oceanview. That is the end of our standing inquiry. Any events occurring after that time do not pertain to standing; the only question is whether they render Doe's case moot. Even when "[n]either party has raised the issue of mootness on appeal, . . . because it is a jurisdictional question, we must examine the issue *sua sponte* when it emerges from the record." *Muhammad v. City of New York Dep't of Corr.*, 126 F.3d 119, 122 (2d Cir. 1997) (quotation marks and citation omitted).

"While standing doctrine determines whether a plaintiff has a personal stake in the litigation when the complaint is filed, mootness doctrine determines what to do if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation after its initiation." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126 (2d Cir. 2020) (per curiam) (cleaned up). The State's jurisdictional challenge, though styled as one addressing standing, in fact focuses on events occurring after Doe initiated this action on November 22, 2016: Doe moved back into Oceanview pursuant to the TRO in October 2017; the Waiver Rule was initiated in October 2019; Doe attempted to move out of Oceanview in November 2021, and then promptly returned; and an April 2024 report revealed that Oceanview lost its status as a TAH at some point between March 2023 and March 2024. Tenth Annual Report at 22 & n.28, *O'Toole*, No. 1:13CV04166(NGG)(ST).

In sum, post-filing changes in circumstance cannot deprive a plaintiff of standing. *See Davis*, 554 U.S. at 734. Doe "met the requirements for Article III standing when [he] commenced the present action," *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016), and that is what matters to the analysis. *See id.* (determining that "supposedly curative decisions" by foreign courts did not destroy standing because they had not "yet been rendered" when plaintiff commenced that action (citing *Davis*, 554 U.S. at 734)); *Fed. Defs. of New York, Inc.*, 954 F.3d at 126 ("In arguing that the Federal Defenders' stated injuries are not redressable because the MDC has returned to its normal inmate-attorney visitation schedule, Defendants appear to confuse standing with mootness."). But our jurisdictional inquiry does not end with standing. Because the State focuses exclusively on events that occurred after the filing of the

complaint, we instead evaluate its challenge to subject matter jurisdiction through the lens of mootness.

## I. Doe's Claims Are Moot Because He Lacks an Enduring Stake in the Outcome of this Suit.

To sustain jurisdiction, a dispute must not only be alive when filed, but throughout its pendency. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013). A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," *id.* at 91 (quotation marks and citation omitted), making it "impossible for a court to grant any effectual relief whatever to the prevailing party," *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) (per curiam) (quotation marks and citation omitted). "The voluntary cessation of allegedly illegal conduct usually will render a case moot" if "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) (quotation marks and citation omitted). Here, the State rendered this case moot by voluntarily ceasing its enforcement of the Regulations against Doe. Specifically, it consented to his return to Oceanview pursuant to the TRO, promulgated the Waiver Rule, and terminated Oceanview's TAH classification.

It is clear from the record that "there is no reasonable expectation that the alleged violation"—Doe's being denied readmission to Oceanview because of the Regulations—"will recur." *Id.* First, the Waiver Rule makes it unlikely that Doe will again be denied entry to Oceanview. "[A] significant amendment or repeal of a challenged provision that obviates the plaintiff's claims" ordinarily

moots a litigation, "absent evidence that the defendant intends to reinstate the challenged statute after the litigation is dismissed, or that the municipality itself does not believe that the amendment renders the case moot." *Id.* at 377. In the absence of such evidence, we should defer to a government entity's representation that it will not reinstate a challenged provision. *Id.*

There is no reason to doubt the State's commitment to the Waiver Rule here because the Regulations were only enacted as the result of a separate ADA litigation, rather than because of any independent State motive to limit the number of mentally ill residents in TAHs. *Cf. Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 604 (2d Cir. 2016) (county's voluntarily cessation did not moot lawsuit where it occurred under "suspicious timing and circumstances"; cessation tracked the timeline of the litigation; and county failed to notify the court of its plans (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982))). Doe points out that the State's decision to ultimately grant him a waiver—if he ever requests one—remains discretionary and asserts that the DOH denied waivers for three applicants in December 2020 after a weeks-long delay. But, as discussed above, there is no apparent incentive for the State to abandon the Waiver Rule or deny or delay Doe's application if this suit is dismissed.[5]

It is also far from certain that Doe will ever need a waiver in the first place. Doe currently resides at Oceanview, where he has remained (but for one day) for over seven years. Although Doe has expressed a desire "to once again move out to his own apartment," App'x at 1376, he has no actual plan to leave—and, therefore, no plan

---

[5] DOH officials testified that waivers are granted or denied, on average, within 1.5 days. App'x at 1376.

10

to return. As Doe stated in his response to the State's Statement of Material Facts, he merely "wants the option to move back to Oceanview if" he does move out, and "it does not work out again." *Id.* Because Doe lacks a concrete plan to leave Oceanview, he is unlikely to face an injury even if the State were to revoke the Waiver Rule.

Future injury is even less likely because Oceanview is no longer a TAH and is therefore not covered by the Regulations' restriction on admitting seriously mentally ill residents. Throughout this litigation, Doe has only ever asserted that he would seek to return to Oceanview, not any other TAH. *See, e.g.*, App'x at 1379-80 ("I did not know the neighborhood and I did not know anyone who lived around there. . . . Because I was very unhappy with the apartment that I was assigned to, I asked my social worker to bring me back to Oceanview[.]"); *id.* at 1380 ("I am very afraid to move out if I cannot be sure that I can return to Oceanview whenever I want."). Doe's theory of future injury is thus tied exclusively to the harm he would suffer if he were denied readmission specifically to Oceanview, which is impossible unless Oceanview is re-designated as a TAH.

Finally, "interim relief [and] events have completely and irrevocably eradicated the effects of the alleged violation." *Lamar*, 356 F.3d at 375 (quotation marks and citation omitted). As discussed above, Doe was readmitted to and continues to reside in Oceanview, which is no longer a TAH and is therefore not subject to the Regulations. Further, the State promulgated the Waiver Rule to provide individuals like Doe with protection from the harm Doe fears. Because Doe lacks any continuing personal stake in the outcome of this case, it is moot.

11

## II. No Exceptions to Mootness Apply.

A suit is not moot if it targets conduct which is "capable of repetition, yet evading review." *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 84-85 (2d Cir. 2005) (quotation marks and citation omitted). This rule "applies only in exceptional situations" where "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 85 (cleaned up). Regarding the first condition, the Regulations were not promulgated with any expiration date. None of the events that mooted Doe's suit—the Waiver Rule, Doe's return to Oceanview, or Oceanview's change in status—are themselves too limited in duration to prevent the Regulations from being fully litigated.

Second, there is no reasonable expectation that the Regulations will exclude Doe from Oceanview again. Repetition "must be more than a mere physical or theoretical possibility," but "probable." *Id.* at 86 (quotation marks and citation omitted). As described above, Doe's claim of future injury is highly speculative. He must first leave and then seek readmission to Oceanview. The State must then reject or delay the issuance of the waiver. Moreover, now that Oceanview is no longer a TAH, it would also have to be redesignated as such before Doe seeks readmission. Doe has not established a substantial risk that all of these events will occur. This is not the kind of situation that defeats mootness, but a risk that does not now exist and likely never will.

## CONCLUSION

"When a civil case becomes moot on appeal from a federal district court, the appropriate disposition is to dismiss the appeal, reverse or vacate the district court judgment, and remand the case to the district court with instructions to dismiss the complaint." *N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992) (quotation marks and citation omitted). Accordingly, the appeal is **DISMISSED** as moot, the June 30, 2023, Order of the district court is **VACATED**, and the case is **REMANDED** with instructions to dismiss for lack of subject matter jurisdiction.