**B. LEWIS PRODUCTIONS, INC.,**
Plaintiff–Counter–Defendant–
Appellant–Cross–Appellee,

**Butch Lewis, Counter–Defendant–**
Cross–Appellee,

v.

**Maya ANGELOU, Defendant–Counter–**
Claimant–Appellee–Cross–
Appellant,

**Hallmark Cards, Incorporated,**
Defendant–Appellee.

Nos. 03–7864(L), 03–7922(XAP).

United States Court of Appeals,
Second Circuit.

May 21, 2004.

Jethro M. Eisenstein, Profeta & Eisenstein, New York, NY, for Plaintiff–Counter–Defendant–Appellant–Cross–Appellee B. Lewis Productions, Inc. and Counter–Defendant–Cross–Appellee Butch Lewis.

Martin R. Gold, Sonnenschein Nath & Rosenthal LLP (Jacob Inwald), New York, NY, for DefendantCounter–Claimaint–Appellee–Cross–Appellant Maya Angelou, of counsel.

Daniel H. Weiner, Hughes Hubbard & Reed LLP (Norman C. Kleinberg & Lori A. Mason), New York, NY, for Defendant–Appellee Hallmark Cards, Inc., of counsel.

Present: NEWMAN, KATZMANN, Circuit Judges and KOELTL,* District Judge.

* The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and order of the district court be and hereby is **AFFIRMED IN PART** and **VACATED IN PART.**

Plaintiff B. Lewis Productions appeals from a grant of summary judgment entered by the Southern District of New York (Michael B. Mukasey, *Chief Judge*) dismissing its claims against poet Maya Angelou for breach of fiduciary duty in connection with a joint venture agreement and breach of the implied covenant of good faith and fair dealing, and dismissing its related claims against Hallmark Cards, Inc. Defendant Angelou cross-appeals the grant of summary judgment against her on her counterclaims of fraud and unilateral mistake against B. Lewis Productions and Butch Lewis. Because the district court considered only whether the letter agreement underlying this dispute created a joint venture or could be interpreted as an exclusive agency agreement, we vacate in part the grant of summary judgment and remand for further proceedings consistent with this order. We also note that, on remand, the plaintiff should be permitted to amend its complaint to include a plea for recovery based in quantum meruit.

In November of 1994, the poet Maya Angelou—after some negotiations pursued by her friend Robert W. Brown—signed a letter agreement (the "Letter Agreement") that purported to create a joint venture between her and B. Lewis Productions, an entity founded by the former prize fighter Butch Lewis. Pursuant to this agreement, B. Lewis Productions approached several

card distributors about potential placement of Angelou's works. Hallmark Cards expressed interest in pursuing a relationship and B. Lewis Productions began negotiating on Angelou's behalf. Because B. Lewis Productions refused to show the purported joint venture agreement to the Hallmark representatives, the latter insisted upon receiving other proof that the company was, in fact, authorized to negotiate for Angelou. On June 16, 1996, Angelou herself signed a missive to Hallmark stating that "This will confirm that **Butch Lewis Productions, Inc. (BLP)** has the exclusive right to represent **Dr. Maya Angelou** for the exploitation of her work product in the area of greeting cards, stationery, calendars, etc as per the contract executed by BLP and Dr. Angelou dated November 22, 1994 which is still in full force and effect." Letter of Maya Angelou and B. Lewis Productions to Hallmark Cards, Inc. (June 19, 1996).

B. Lewis Productions and Hallmark subsequently produced a draft license agreement, which specified that it would last from March 1, 1997 to December 31, 2000, and would have provided Angelou with a $50,000 non-refundable advance. Angelou, however, upon being apprised of the situation, insisted that other concerns, including her son's illness and her long-standing relationship with Random House, prevented her from entering into the arrangement at that time. Her view of Butch Lewis himself also appears to have soured during this period, after an alleged embarrassing incident at a reception in Las Vegas, and Angelou claims to have verbally informed Lewis that she no longer wished to pursue a business relationship with him.

In 1999, another individual at Hallmark was apprised by a third party that Angelou might, in fact, be interested in pursuing a relationship with the card company. Although this person knew of the earlier contacts with B. Lewis Productions, she did not attempt to work through B. Lewis Productions, stating instead that "dealing with Lewis had caused 'a tidal wave of angst.'" A plan was developed according to which Hallmark would not have to deal with B. Lewis Productions; as a result, Angelou sent a letter to Butch Lewis on June 16, 1999, terminating their relationship. In June 2000, after further negotiations, Angelou finally entered into a licensing agreement with Hallmark, which guarantees her an advance of one million dollars and a sliding scale of licensing fees.

On January 22, 2001, B. Lewis Productions filed suit in the Southern District of New York against both Angelou and Hallmark Cards, alleging, against Angelou, breach of fiduciary duty arising out of the supposed joint venture agreement, and breach of the implied obligation of good faith and fair dealing contained in the Letter Agreement. The plaintiff also alleged, against Hallmark, tortious interference with contract and aiding and abetting a breach of fiduciary duty. The plaintiff requested damages in the amount of $10,000,000 from both Angelou and Hallmark. Angelou counterclaimed, alleging fraud and unilateral mistake against Butch Lewis and B. Lewis Productions on the theory that Butch Lewis had misled her into believing that Robert Brown had approved the Letter Agreement.

The district court granted summary judgment on all claims, determining that the Letter Agreement lacked certain terms essential to creating a joint venture under either New York or North Carolina law, and, therefore, that B. Lewis Productions' suits against both Angelou and Hallmark must fail. The court below also held that the facts could not support Angelou's counterclaims for fraud and unilateral mistake because, given the plain language of

the agreement, any reliance on Butch Lewis's alleged misrepresentations was not reasonable. This appeal followed.

In an appeal from a district court's grant of summary judgment, we review "the record *de novo* to determine whether genuine issues of material fact exist requiring a trial." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). We will affirm only "if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 440 (2d Cir.2002).

We hold, largely for the reasons stated by the district court, that the Letter Agreement did not, in fact, create a joint venture, and, by extension, B. Lewis Productions cannot recover against Hallmark on a theory of substantial assistance in breach of fiduciary duty. We also concur in the district court's determination that Angelou's reliance on the representations that she claims Butch Lewis made about the letter agreement were not justifiable, as a matter of law, and her counterclaims of fraud and unilateral mistake must therefore also fail.

The district court did not, however, consider whether the Letter Agreement formed a contract other than a formal joint venture or exclusive agency agreement. The New York courts, at least, have indicated in other contexts that parties are not limited by the label they used in describing their agreement. *See City of New York v. Penn. R.R. Co.*, 37 N.Y.2d 298, 372 N.Y.S.2d 56, 333 N.E.2d 361, 362 (1975); *Richmond Children's Ctr., Inc. v. Fireman's Fund Ins. Cos.*, 128 A.D.2d 849, 513 N.Y.S.2d 769, 770 (1987).[1] B. Lewis Productions never explicitly argued on the motion for summary judgment that the

Letter Agreement should be enforced as a simple contract if found unenforceable as a joint venture. The parties, however, addressed the issue of whether the Letter Agreement was too indefinite to be enforced as any kind of contractual obligation, and the district court considered whether the purported joint venture agreement could alternatively be construed as an exclusive agency contract. The issue of enforcing the Letter Agreement as a form of contract other than a joint venture was thus sufficiently raised below. *See Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir.1996) (allowing appellant to raise a new legal argument concerning an issue that was considered by the district court); *see also United States v. Graham*, 257 F.3d 143, 151 n. 4 (2d Cir.2001) (quoting *Ford* and noting that discretion to entertain a new argument lies with the Court of Appeals). Because the district court did not consider whether the Letter Agreement could be construed as a simple bilateral contract, we remand for consideration of this issue. The parties should raise in the first instance with the district court whether, as a matter of law and fact, the Letter Agreement can be read as a simple contract despite its failure to establish a joint venture. We also reinstate the derivative cause of action for tortious interference with contract against Hallmark.

The defendants further argue, as they did below, that the Letter Agreement does not fulfill the requirements of a contract, because its terms are too indefinite. Although we have previously stated that, "If essential terms of an agreement are omitted or are phrased in too indefinite a manner, no legally enforceable contract will

---

1. Although we perform our analysis under New York law, we express no view on either the choice of law question or the state of

North Carolina law, and leave these determinations for the district court on remand.

result," *Brookhaven Hous. Coalition v. Solomon*, 583 F.2d 584, 593 (2d Cir.1978), we are cautious about applying this rule to invalidate contracts, and have also noted that:

> An agreement need not spell out all details of the bargain in order to be enforceable. Even if the parties have left some terms of their agreement indefinite, a court may enforce the agreement if it has means of giving content to the indefinite terms, or if those terms are not material to the bargain.

*United States v. Bedford Assocs.*, 657 F.2d 1300, 1310 (2d Cir.1981) (internal citations omitted). On remand, the district court should consider whether, if the Letter Agreement can be construed as a simple bilateral contract, its terms were sufficiently definite to form such a contract.

The plaintiff also might have an argument that it is entitled to reasonable compensation, even in the absence of a contract. B. Lewis Productions performed its obligation pursuant to the putative contract by negotiating with and securing a draft agreement with Hallmark, and Angelou's own letter to Hallmark confirmed his authority to do so. Angelou subsequently signed a very lucrative licensing agreement with the same card company. These circumstances arguably suggest that B. Lewis Productions might be entitled to damages on a quantum meruit theory of recovery, somewhat analogous to a finder's fee for developing what turned out to be a valuable business opportunity for Angelou. *See Tesser v. Allboro Equip. Co.*, 302 A.D.2d 589, 756 N.Y.S.2d 253, 254 (2003) ("To state a cause of action to recover in quantum meruit, the plaintiff must allege (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services

allegedly rendered."). On remand, the plaintiff may amend its complaint to assert a claim for quantum meruit, if it so chooses. *See Lamar Adver. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 380 (2d Cir.2004) (providing for potential amendment of the complaint on remand). However, we express no view as to whether any quantum meruit recovery would be warranted.

The judgment and order of the district court is therefore **AFFIRMED IN PART** and **VACATED IN PART** and the case is remanded to the district court for further proceedings.