**Castine v. Zurlo**

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2013

(Argued:     March 11, 2014          Decided: June 23,  2014)

Docket No. 13-1834-cv

--------------------------------------------------------------X

SUSAN R. CASTINE,

*Plaintiff-Appellant*,

v.

MICHAEL E. ZURLO, in his individual and official capacity, CLINTON COUNTY,

*Defendant-Appellees*.[1]

--------------------------------------------------------------X


Before:       JACOBS, LEVAL, and POOLER, *Circuit Judges*:

Plaintiff Susan R. Castine appeals from a judgment of the United States District Court for the Northern District of New York (Hurd, *J.*) dismissing her suit against Defendants Clinton County and the County Administrator.  Castine alleged that Defendants violated her First Amendment rights by removing her from her office as Election Commissioner while she ran for an elective town office pursuant to an ordinance that disqualified candidates for elective office

---

[1] The Clerk of Court is directed to amend the official caption to conform to the caption above.

from employment in the Board of Elections. She asserted a state law claim as well. The district court concluded that Defendants were entitled to summary judgment. The Court of Appeals (Leval, *J.*) holds that the district court properly granted summary judgment in favor of Defendants on Castine's First Amendment retaliation claim. The court vacates and remands the claim brought under New York state law. The judgment of the district court is therefore AFFIRMED in part and VACATED in part and REMANDED.

THOMAS MARCELLE, Law Office of Thomas Marcelle, Slingerlands, NY, for *Plaintiff-Appellant*.

JOHN F. MOORE, Towne, Ryan & Partners, P.C., Albany, NY, for *Defendant-Appellees*.

LEVAL, *Circuit Judge*:

Plaintiff Susan R. Castine appeals from a judgment of the United States District Court for the Northern District of New York (Hurd, *J.*) dismissing her suit against Defendants Clinton County Administrator Michael E. Zurlo and Clinton County. Castine brought this suit within the federal question jurisdiction of the federal courts, 28 U.S.C. § 1331, protesting her temporary removal from the office of Clinton County Election Commissioner during her candidacy for Beekmantown Town Justice. Her complaint alleges that her removal from office under Clinton County Local Law No. 1 of the Year 2000 ("Local Law No. 1") was an unconstitutional retaliation for the exercise of her

First Amendment rights in running for elective office and seeks damages, declaratory, and injunctive relief under 42 U.S.C. § 1983. The district court granted Defendants' motion for summary judgment on that claim. The court concluded that Castine's evidence failed to show a genuine issue of material fact supporting her claim of unconstitutional retaliation. We agree and therefore affirm the judgment insofar as it dismissed her federal claim.

Castine's complaint included a second claim, brought under supplemental jurisdiction, *see* 28 U.S.C. § 1367, seeking a declaratory judgment that Clinton County Local Law No. 1 is void under New York state law. The District Court granted summary judgment in favor of the defendants on that claim as well. We vacate that aspect of the judgment and remand for further consideration.

**FACTUAL BACKGROUND**

In 2006, Castine was elected to the position of Beekmantown Town Justice for a four-year term beginning January 1, 2007. In 2008, while serving as Town Justice, she was appointed as the Democratic Party's Election Commissioner for Clinton County to fill a two-year vacancy beginning January 1, 2009.

As Election Commissioner, Castine served at the head of the Board of Elections, which was charged with, among other things, determining the validity

3

of petitions, determining which voters are entitled to vote by absentee ballot, counting, tallying, and canvassing votes for primary and general elections, and approving the form of the ballots for primary and general elections. Election Commissioners also share responsibility for preparing the form of the ballot, including deciding the placement of candidates on the ballot. These responsibilities extend to Beekmantown local elections, including its election for Town Justice.

To preserve the integrity of local elections, Local Law No. 1 prohibits candidates for elective public office from simultaneously holding employment or office in the Board of Elections. That law provides, in relevant part, that "[a]ny person who shall become a candidate for elective public office shall be disqualified during the period of his or her candidacy from appointment or continued employment from the Board of Elections." Local Law No. 1.

On July 12, 2010, while serving as Election Commissioner, Castine filed a petition with the Clinton County Board of Elections to become a candidate for reelection to the position of Beekmantown Town Justice. In response, at a July 14 meeting of the Clinton County Legislature, Zurlo called an executive session seeking direction on how to handle Castine's simultaneous employment as

4

Election Commissioner and candidacy for Beekmantown Town Justice. In particular, Zurlo sought a determination whether to enforce Local Law No. 1. After receiving advice from the County Attorney, the Legislature unanimously agreed that Local Law No. 1 should be enforced against Castine.[2]

On July 15, 2010, Zurlo wrote Castine a letter informing her of the Clinton County Legislature's determination to enforce Local Law No. 1 against her. The letter also informed Castine that, unless she provided evidence of the declination of her candidacy for Town Justice prior to July 16, 2010, she would be expected to terminate her employment as Election Commissioner. The next day, Zurlo sent Castine an e-mail saying: "I just wanted to confirm that you will be sending me a copy of proof of declination today." Castine wrote back almost immediately: "I will be responding today," but sent no further communication.

Castine had multiple conversations with Clinton County Personnel Director Alan Gibson. Gibson asked Castine to complete a termination form and to vacate her office. Castine responded that she believed Gibson did not have the

---

[2] In her complaint and in certain filings below, Castine also raised an argument about the potentially improper motivation of the Clinton County Legislature in deciding to enforce Local Law No. 1 against her, suggesting that the action was taken in order to advance the candidacy of a legislator's nephew who was also running for Beekmantown Town Justice. Castine has abandoned this argument on appeal.

authority to remove her from office and that she would leave her office only with a deputy present.

On July 19, 2010, Gibson went to Castine's office with a deputy sheriff who waited outside her door. Gibson asked Castine to sign a termination checklist, which she refused to do. He and the deputy then escorted Castine from the building. That same day, Castine filed this lawsuit.

On November 2, 2010, Castine won the election for Beekmantown Town Justice, and the next day she returned to her position as Election Commissioner.

## PROCEDURAL HISTORY

Castine, the Clinton County Democratic Party, and Martin Mannix (as Chairman of the Clinton County Democratic Party) brought this action on July 19, 2010, against County Administrator Zurlo (in his individual and official capacities) and the County. In October 2011, Mannix and the Clinton County Democratic Party then voluntarily dismissed all of their claims. In late 2011 and early 2012, Castine and Defendants cross moved for summary judgment. On April 12, 2013, the district court granted summary judgment in favor of the Defendants on all of Castine's claims. Castine appealed. She contests only the dismissal of the two claims described above.

6

**DISCUSSION**

Castine's federal claim asserts that the Defendants violated her constitutional rights by removing her from office as Election Commissioner under Local Law No. 1 in retaliation for exercising her First Amendment–protected right to run for elective office. She contends on appeal that the district court erred in granting summary judgment on that claim.[3]

For the reasons that follow, we agree with the district court that Castine has not cited to evidence that would permit a reasonable factfinder to find in her favor. We therefore affirm the district court's grant of summary judgment on that claim.

The principal authority governing cases of this nature is *Pickering v. Board of Education*, 391 U.S. 563 (1968), in which the local newspaper published a letter to the editor from a teacher, Marvin Pickering, which criticized the local School Board's handling of certain bond issue proposals and its allocation of resources. Pickering's letter took the position, among others, that too much money was

---

[3] "We review an award of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party." *Lynch v. City of New York*, 737 F.3d 150, 156 (2d Cir. 2013). Summary judgment is proper "only where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Id.*

being spent on athletics. The Board fired Pickering for writing the letter, and Pickering brought suit, alleging that the firing in retaliation for his exercise of a First Amendment–protected right was a tort in violation of the Constitution. *Id.* at 564, 567.

The Supreme Court ruled in the teacher's favor, but only after engaging in a balancing of interests. The Court made clear that, while public school teachers do not relinquish their First Amendment right to speak as citizens on matters of public interest regarding their schools, that right does not necessarily protect them from adverse employment action by reason of their speech. This is because "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Id.* at 568. The Court's reasoning thus relied on the proposition that a public employer does not necessarily violate an employee's First Amendment rights by taking an adverse employment action against that employee to discipline her for speech on matters of public concern, even when that speech is protected (in other ways) under the First Amendment. In such circumstances, rather than consider the speech under the lens of strict scrutiny, courts must "arrive at a balance between the interests of the teacher, as

a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

Applying this test to the facts of Pickering's case, the court found that the balance favored Pickering. His letter to the editor in no way impaired Pickering's performance of his job as a teacher or the ability of the schools to function properly:

> [His] statements [were] in no way directed towards any person with whom [he] would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by immediate superiors or harmony among coworkers [was] presented . . . . [Pickering's] employment relationships with [those he criticized were] not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning.

*Id.* at 569-70. Pickering's assertions that "too much money [was] being spent on athletics . . . [could not] reasonably be regarded as *per se* detrimental to the district's schools." *Id.* at 571. His criticisms of and disagreements with the Board did not "in any way either impede[] [the] proper performance of his daily duties in the classroom or . . . interfere[] with the regular operation of the schools generally." *Id.* at 572-73 (footnote omitted).

9

While for those reasons the balance of factors distinctly favored the employee in Pickering's case, we have formulated considerations that bear upon how state defendants may "avoid liability under . . . the *Pickering* balancing test," *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 115 (2d Cir. 2011).[4] "Under this defense, '[a] government employer may take an adverse employment action against a public employee for speech on matters of public concern if: (1) the employer's prediction of the disruption that such speech will cause is reasonable; (2) the potential for disruption outweighs the value of the speech; and (3) the employer took the adverse employment action not in retaliation for the employee's speech, but because of the potential for disruption.'" *Anemone*, 629 F.3d at 115 (quoting *Johnson v. Ganim*, 342 F.3d 105, 114 (2d Cir. 2003)); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 382-83 (2d Cir. 2003).

On numerous occasions, we have rejected claims of First Amendment retaliation involving dismissals from employment on this basis. For example, we have upheld disciplinary terminations of police officers because they disseminated racially biased public speech, notwithstanding that they were

---

[4] In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court expressed the view that, if a public "employee [speaks] as a citizen on a matter of public concern," then the "question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* at 418.

10

speaking anonymously as private citizens, on their own time, and on matters of public concern. *See Locurto v. Giuliani*, 447 F.3d 159, 178 (2d Cir. 2006); *Pappas v. Giuliani*, 290 F.3d 143, 146-47 (2d Cir. 2002). We reached this conclusion in recognition that a police department is impaired in the performance of its duties to the extent it is viewed by the public as staffed by racially biased officers. *See Locurto*, 447 F.3d at 178; *Pappas*, 290 F.3d at 146-47. In other contexts, too, we have recognized that public employers must, to a degree, be able to restrict the speech of their employees, or they will be unable to perform important work necessary to the functioning of the State. *See, e.g.*, *Piscottano v. Murphy*, 511 F.3d 247, 276-78 (2d Cir. 2007); *Lewis v. Cowen*, 165 F.3d 154, 164-65 (2d Cir. 1999).

Here, Castine argues that Defendants impermissibly retaliated against her by temporarily removing her from her position as Election Commissioner during her candidacy for Beekmantown Town Justice. We assume, for purposes of this opinion, that she has made out a prima facie case of First Amendment retaliation. Her act of running for elective public office is a form of speech that is protected by the First Amendment.[5] And there is no doubt that the Defendants' act of

---

[5] In the context of First Amendment retaliation claims by public employees, we have not always used the term "protected speech" to refer to the same thing. In some contexts, we have referred to "protected speech" to mean any speech potentially protected by the First Amendment. *See, e.g.*, *Name.Space, Inc. v.*

11

temporarily removing her from office at the Board of Elections  was an adverse employment action taken by reason of her running for elective office.

Nevertheless, the uncontroverted record evidence compels the conclusion that, under the *Pickering* balancing test, Defendants' conduct did not violate the First Amendment.  First, it was reasonable for Defendants to expect that Castine's candidacy for elective office would create a conflict of interest with her position as Election Commissioner and that it would impair the integrity of Clinton County elections to permit Castine to occupy those two roles simultaneously.  Second, it is clear that Defendants temporarily suspended

*Network Solutions, Inc.*, 202 F.3d 573, 585 (2d Cir. 2000).  This meaning of "protected speech" is expansive, covering almost anything that can be described as speech, with only the narrowest exceptions for shouting fire in a crowded theater, obscenity, speech likely to incite imminent violence, and the like.  *See, e.g.*, *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245-46 (2002); *United States v. Irving*, 452 F.3d 110, 120 (2d Cir. 2006).  But we have also used the term "protected speech" to mean speech that a public employee is entitled to make without incurring any adverse employment actions by his or her government employer (subject to the *Pickering* balancing defense).  *See, e.g.*, *Nagle v. Marron*, 663 F.3d 100, 105-06 (2d Cir. 2011).  This second meaning of "protected speech" is significantly narrower than the first, as public employees cannot state a claim for First Amendment retaliation unless (among other requirements) they speak as citizens on matters of public importance.  *See Garcetti*, 547 U.S. at 417.  The speech at issue here, running for public office, is protected in the first sense.  Because we conclude that the Defendants in any event prevail under *Pickering* by showing that the Castine's run for public office while sitting in the Board of Elections would disrupt the efficacy of the Board, we need not now decide whether Castine's speech satisfies all the requirements to qualify as protected in the second, narrower sense.

12

Castine in order to advance the permissible objective of enforcing local law and minimizing the potential damage to the integrity of local elections. Third, the Defendants' interest in avoiding disruption to the work of the Election Commission outweighs Castine's interest in running for public elective office while simultaneously serving as Election Commissioner.

We have no hesitation in concluding that the balance of interests here favors Defendants. Although presented in a slightly different manner, the same factors that dictated the results of *Locurto* and *Pappas* similarly require the rejection of Castine's claim. In the office of Election Commissioner, Castine played a governing role in the body charged with responsibility to supervise the conduct of elections. As a candidate for Town Justice, Castine would participate in an election supervised by the Board of Elections. The Clinton County legislature reasonably concluded that the Board's ability to supervise elections fairly, as well as the public perception of its fairness in performing that function, would be impaired if the persons involved in exercising the supervisory responsibility were themselves candidates in the elections they were supervising. This would present an unacceptable conflict of interest. The legislature therefore enacted the law disqualifying candidates for elective office from simultaneous

13

employment in the Board of Elections. At least the appearance of fairness, and in all likelihood the fact as well, would have been substantially impaired if a candidate for election were to participate in the functions of the Board of Elections supervising that election. The act of the Defendants in removing Castine from her position as Commissioner for the duration of her campaign for elective office reasonably gave effect to this altogether reasonable provision of law. Although without doubt the enforcement of the law caused some curtailment of Castine's exercise of her First Amendment rights, the *Pickering* test authorizes such a result. Granting to Castine the right to retain her position as Election Commissioner while she ran for office in an election supervised by the Board of Elections would have impaired the Board's ability to perform its functions appropriately.

We find further support for our analysis in the Supreme Court's clear pronouncements that the Constitution affords States substantial leeway to ensure the fairness of their own elections in matters unrelated to campaign finance regulations. *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections."). "[W]hen a state election law provision

14

imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of [individuals], 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). Applying this standard (or its antecedents), the Supreme Court has upheld many state restrictions on elections, including Minnesota's prohibition on multi-party candidacies for elected office, *see Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 365-66, 370 (1997), Hawaii's ban on write-in ballots, *Burdick*, 504 U.S. at 438-39, and California's rule barring persons with certain political party affiliations from running as independent candidates, *Storer v. Brown*, 415 U.S. 724, 733-34 (1974). These restrictions constrained the political expression of citizens and candidates for office in important ways, but, in each case, the Court held that the State's constitutional interest in regulating elections took precedence over the individual's right to free speech. Compared to such substantial restrictions, Clinton County's carefully drawn effort to prevent direct conflicts of interest on its Board of Elections imposes a minimal burden on individuals in service of an enormously important state aim.[6]

---

[6] Castine also argues that, because Local Law No. 1 is purportedly invalid under New York state law, Clinton County cannot, consistent with the First

15

Defendants have met their burden under the *Pickering* balancing test to show that, assuming Castine established a prima facie case of retaliation in violation of the First Amendment, her removal from office was nonetheless permissible. Consequently, Defendants were entitled to take adverse employment actions against Castine to preserve the integrity of the Clinton County Board of Elections and to enforce Local Law No. 1. We therefore affirm the judgment of the district court as to this claim.[7]

As to the second claim on appeal — seeking a declaratory ruling that Local Law No. 1 was invalid as a matter of law — the statute was not being enforced against Castine when the district court rendered judgment (about two-and-a-half years after her reinstatement to the Board of Elections). This timing raises a substantial question whether that claim was (and/or is) moot. We therefore vacate the judgment and remand to the district court to consider the question of mootness in the first instance. Alternatively, on remand, the district court should consider whether, simply as a matter of discretion, it would be preferable to

Amendment, enforce it. We disagree that the validity of a local ordinance under the U.S. Constitution depends, in the manner suggested by Castine, on its validity under state law. The First and Fourteenth Amendments of the U.S. Constitution do not, as a general matter, speak to the obligations of local governments to follow *state* laws.

[7] The Supreme Court's recent opinion in *Lane v. Franks*, 573 U.S. ___ (2014), includes nothing that is in any way inconsistent with this analysis.

16

decline to exercise supplemental jurisdiction over this novel, complex matter involving the interplay between state and local law, *see* 28 U.S.C. § 1367, and dismiss the claim without prejudice, allowing Castine to bring the claim in the courts of New York. Such a ruling would obviate the need to consider the question of mootness.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and VACATED in part and REMANDED.

17