21-719-cv
Davi v. Hein

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of March, two thousand twenty-three.

PRESENT:
> **ROBERT D. SACK,**
> **RAYMOND J. LOHIER, JR.,**
> **MYRNA PÉREZ,**
> *Circuit Judges.*

_____

Salvatore Davi,

*Plaintiff-Appellee,*

v.                                                              **No. 21-719-cv**

Michael P. Hein, in his official capacity, Samuel Spitzberg, in his individual and official capacity, Krista Rock, in her individual and official capacity, Jill Shadick, in her official capacity,

*Defendants-Appellants,*

Eric Schwenzfeier, in his individual capacity, Sharon Devine, in her individual capacity, Samuel Roberts, in his individual capacity, Donna Faresta, in her individual capacity, Wilma Brown-Philips, in her individual and official capacity.

*Defendants.*

_____

**FOR PLAINTIFF-APPELLEE:** MICHAEL E. ROSMAN (Michelle A. Scott, *on the brief*), Center for Individual Rights, Washington, DC.

**FOR DEFENDANTS-APPELLANTS:** GRACE X. ZHOU, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Anisha S. Dasgupta, Deputy Solicitor General, Linda S. Fang, Assistant Solicitor General, *on the brief*), *for* Letitia James, Attorney General, State of New York, New York, NY.

**FOR AMICI CURIAE INSTITUTE FOR FREE SPEECH AND CATO INSTITUTE:** EUGENE VOLOKH, First Amendment Amicus Brief Clinic, UCLA School of Law, Los Angeles, CA, ILYA SHAPIRO, TREVOR BURRUS, Cato Institute, Washington, DC, ALAN GURA, Institute for Free Speech, Washington, DC.

Appeal from an order and permanent injunction of the United States District Court for the Eastern District of New York (Edward R. Korman, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 3, 2021 order of the district court is **VACATED**, the March 24, 2021 permanent injunction of the district court is **VACATED**, and the action is **REMANDED** for further proceedings consistent with this summary order.

The principal issue raised by this appeal is whether the district court misapplied the balancing test articulated in *Pickering v. Board of Education*, 391 U.S. 563 (1968), when it concluded that the interest of Plaintiff-Appellee Salvatore Davi ("Plaintiff") in sharing his views on the effectiveness of public assistance programs on Facebook outweighed the interest of his employer, the New York State Office of Temporary and Disability Assistance ("OTDA"), in maintaining its operations and reputation for impartiality.

The district court granted partial summary judgment to Plaintiff and imposed a permanent injunction. *Davi v. Roberts*, 523 F. Supp. 3d 295, 309–10 (E.D.N.Y. 2021), *clarified on reconsideration*, No. 16-cv-5060 (ERK), 2021 WL 2184873 (E.D.N.Y. May 28, 2021). The district court also granted in part and denied in part OTDA's motion for summary judgment seeking dismissal of Plaintiff's claims for money damages against certain OTDA employees sued in their individual capacities. *Id.* at 311–14.

Various OTDA employees (collectively, "Defendants") now appeal. Because we conclude, irrespective of the ultimate correctness of the conclusions the district court reached with regard to the appropriate legal consequences of OTDA's treatment of Plaintiff, that the district court misapplied the *Pickering* test, we vacate the district court's orders and remand for it to apply the test correctly. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we discuss only as necessary to explain our decision.

**I.     Background**

OTDA is the New York State agency charged with overseeing public assistance programs for low-income individuals and families, including food stamps, disability benefits, and other forms of supplemental income. Individuals who receive an adverse determination regarding their eligibility for public benefits are entitled to challenge the denial or reduction of benefits in a "fair hearing" before a hearing officer employed by OTDA. *See* N.Y. Soc. Serv. Law § 22.

Plaintiff served as an OTDA hearing officer from 2010 to 2016. In October 2015, Plaintiff engaged in a contentious exchange with a former law school classmate in the comment section of a "private" Facebook post in which he was critical of the effectiveness of some public assistance programs. *See* Special App'x 4–5. The former classmate then sent a letter to the Commissioner of OTDA that appended a copy of the Facebook exchange. That letter suggested that she had also

3

sent a copy of the Facebook exchange to Project FAIR, a Legal Aid group that represents individuals in "fair hearings" and operates a help desk at the "fair hearing" site where Plaintiff worked. The former law school classmate later confirmed to OTDA that she had in fact sent a copy of the Facebook exchange to Project FAIR.

In response, OTDA began an investigation and removed Plaintiff from the hearing calendar pending the investigation's outcome. Ultimately, OTDA issued Plaintiff a Notice of Discipline seeking his termination. Pursuant to the collective bargaining agreement between OTDA and Plaintiff's union, the parties arbitrated the Notice of Discipline. The arbitrator sustained Plaintiff's pre-arbitration suspension and imposed a six-month suspension without pay. The arbitrator also directed OTDA to offer Plaintiff a different position at the same pay grade that did not include "public-facing" duties. The arbitrator explained that, while he did not find that Plaintiff harbored actual bias, permitting Plaintiff to continue presiding over "fair hearings" would undermine public trust and confidence in OTDA and interfere with its operations because "[a] reasonable person, upon reading the posting would conclude that [Plaintiff] has a negative bias on issues before him." Joint App'x at 363. OTDA reassigned Plaintiff to a senior attorney position.

Plaintiff filed this action seeking monetary and injunctive relief, claiming that his suspension, his transfer to the senior attorney position, and OTDA's failure to promote him violated his First Amendment rights. Plaintiff and Defendants filed cross-motions for summary judgment. The district court awarded partial summary judgment in favor of Plaintiff and entered a permanent injunction directing OTDA to reinstate him as a hearing officer. The district court also granted in part and denied in part OTDA's motion for summary judgment seeking dismissal of Plaintiff's claims for money damages against certain Defendants sued in their individual capacities. Defendants now appeal.

4

## II.  Standard of Review

We review a district court's award of partial summary judgment *de novo* and affirm only if the record, viewed in the light most favorable to the nonmovant, "shows that there is no genuine dispute as to any material fact and [the movant] is entitled to judgment as a matter of law." *Jackson v. Fed. Express*, 766 F.3d 189, 193–94 (2d Cir. 2014).

We review a district court's grant of a permanent injunction for abuse of discretion. *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016). A district court abuses its discretion when its decision rests on a clearly erroneous factual finding or an error of law, or the decision cannot be located within the range of permissible decisions. *Id.*

## III.  Discussion

### A.  The *Pickering* Test

Where, as here, a government employee is suing for violation of his First Amendment rights and the parties agree that his speech is "'upon a matter of public concern,' . . . the court's task is 'to arrive at a balance between the interests of the citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Pappas v. Giuliani*, 290 F.3d 143, 145–46 (2d Cir. 2002) (alteration omitted) (quoting *Pickering*, 391 U.S. at 568).

Under the *Pickering* test, "the government can prevail if it can show that it reasonably believed that the speech would potentially interfere with or disrupt the government's activities, and can persuade the court that the potential disruptiveness was sufficient to outweigh the First Amendment value of that speech." *Heil v. Santoro*, 147 F.3d 103, 109 (2d Cir. 1998) (citation omitted). We have expressly rejected the notion that the government must show actual disruption to meet its burden. *See Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 115 (2d Cir. 2011) (a showing of potential future disruption may satisfy the *Pickering* test if the "employer's prediction

5

of the disruption that such speech will cause is reasonable"); *Piscottano v. Murphy*, 511 F.3d 247, 271 (2d Cir. 2007) ("Evidence that such harms or disruptions have in fact occurred is not necessary."). Thus, the government "need only make a reasonable determination that the employee's speech creates the potential for such harms." *Piscottano*, 511 F.3d at 271; *see also Melzer v. Bd. of Educ.*, 336 F.3d 185, 197 (2d Cir. 2003) ("Any actual disruption that has already occurred is of course a persuasive argument for the government that it has met its burden, but even a showing of probable future disruption may satisfy the balancing test, so long as such a prediction is reasonable."). To make this showing, the government may point to the potential impact of the speech on "maintaining efficiency, discipline, and integrity, preventing disruption of operations, and avoiding having the judgment and professionalism of the agency brought into serious disrepute." *Piscottano*, 511 F.3d at 271.

In assessing the government's interests in disciplining an employee for his or her speech, courts must afford "substantial weight" to the government's "reasonable predictions of disruption." *Waters v. Churchill*, 511 U.S. 661, 673 (1994); *see also Piscottano*, 511 F.3d at 271 ("[D]eference to the government's assessment of potential harms to its operations is appropriate when the employer has conducted an objectively reasonable inquiry into the facts . . . and has arrived at a good faith conclusion as to those facts. If the employer meets this test, it may, as a matter of law, impose the discipline it deems reasonable, based on the facts it has found, without incurring liability." (citation omitted)).

In conducting the *Pickering* test, the "weighing of the competing interests is a matter of law for the court." *Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011). However, factual disputes as to whether the government had reasonable grounds to fear disruption resulting from the

employee's speech may preclude summary judgment. *Johnson v. Ganim*, 342 F.3d 105, 115 (2d Cir. 2003).

While the district court correctly articulated the government's burden under the *Pickering* test, we conclude that it incorrectly applied the test because it improperly discounted the potential impact of Plaintiff's comments—that is, it did not adequately consider whether Defendants had made a showing of likely disruption or reasonably believed, in good faith, that Plaintiff's speech would cause probable future disruption. The district court did not appear to consider the possibility that Plaintiff's Facebook comments, if discovered by Project FAIR or members of the general public, would undermine OTDA's reputation by suggesting that its hearing officers were biased or unprofessional. *See City of San Diego v. Roe*, 543 U.S. 77, 81 (2004) (government may discipline an employee for speech that "brought the mission of the employer and the professionalism of its officers into serious disrepute"); *U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 564–65 (1973) (government's significant interest in appearance of impartiality outweighed federal employees' interest in directly participating in political campaigns); *Melzer*, 336 F.3d at 198–200 (school teacher's interest in speech supporting sexual relationships with children outweighed by potential disruption to school's mission and operations); *Castine v. Zurlo*, 756 F.3d 171, 175–78 (2d. Cir. 2014) (government's interest in appearance of fair elections outweighed employee's interest in running for public office while employed as Election Commissioner).[2]

The district court also disregarded the risk that Plaintiff's comments could have increased the number of requests for Plaintiff's recusal if OTDA had not promptly removed Plaintiff as a hearing officer. Instead, the district court focused principally on the fact that the Facebook

---

[2] Indeed, Plaintiff conceded as much. *See* Appellee's Br. at 32 ("A diminution in the reputation of an agency for impartiality would likely lead to a disruption of its operations.").

comments appeared not to cause any actual disruption in the short-term. It concluded that because Project FAIR appeared unaware of Plaintiff's Facebook comments and no one had called for Plaintiff to recuse himself (even though OTDA immediately removed him from the hearing calendar), no actual disruption had occurred, and that consequently, OTDA's fear of future disruption was unreasonable. *Davi*, 523 F. Supp. 3d at 309–10. But as discussed above, our case-law teaches that the absence of evidence of actual disruption is not dispositive of whether an employee's speech created a risk of likely disruption or whether the government's prediction of future disruption was reasonable. The fact that actual disruption in the form of recusal requests or otherwise did not manifest in the short time that Plaintiff still appeared on the hearing calendar does not necessarily mean that there was no risk of future disruption. Indeed, the arbitrator concluded that there was "no doubt" that applicants for public assistance who were "armed with the information about the [Facebook exchange] would initiate actions which would lead to recusal demands." Joint App'x at 362; *see also Pappas*, 290 F.3d at 147 (explaining that a third-party's finding of a violation of reasonable agency regulation "is important to our upholding of the lawfulness of the Department's actions").

Moreover, the district court did not consider Plaintiff's "public-facing" role as a hearing officer and the impact, if any, that the nature of Plaintiff's former position had on OTDA's interests in disciplining Plaintiff. *See, e.g.*, *McEvoy v. Spencer*, 124 F.3d 92, 103 (2d Cir. 1997) ("The more the employee's job requires confidentiality, policymaking, or public contact, the greater the state's interest in firing her for expression that offends her employer." (citation omitted)); *Melzer*, 336 F.3d at 197.

In sum, the district court misapplied the *Pickering* test by failing to properly consider (1) the risk of disruption and OTDA's assessment of the risk of potential disruption resulting from

8

Plaintiff's Facebook comments; and (2) Plaintiff's "public-facing" role as a hearing officer. *See Pappas*, 290 F.3d at 151 ("The employer's interest in [disciplining] the employee is demonstrated if the employee's statements create a significant risk of harm, regardless [of] whether that harm actually materializes."); *Piscottano*, 511 F.3d at 271 ("Evidence that such harms or disruptions have in fact occurred is not necessary. The employer need only make a reasonable determination that the employee's speech creates the potential for such harms."); *Jeffries v. Harleston*, 52 F.3d 9, 12–13 (2d Cir. 1995) (holding that the government's burden under *Pickering* is "potential disruptiveness" rather than "*actual* disruption"). Because the district court's decision to grant the permanent injunction rested, at least in part, on what we conclude was a misapplication of the *Pickering* test, we also vacate the permanent injunction. *See Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 427 (2d Cir. 2022).

### B.    Qualified Immunity

In its motion for summary judgment, OTDA also sought dismissal of Plaintiff's claims for money damages against several individual Defendants who worked in various capacities at OTDA. The district court granted OTDA's motion as to all but three of the individual Defendants, Samuel Spitzberg, Eric Schwenzfeier, and Sharon Devine. The district court reasoned that because Plaintiff's speech did not cause actual disruption and was unlikely to cause disruption, there were questions of fact as to whether these individual Defendants took adverse employment actions against Plaintiff in retaliation for his speech, rather than because they reasonably believed that Plaintiff's speech would disrupt OTDA's operations. Accordingly, the district court held that these individual Defendants were not entitled to qualified immunity from claims for money damages at the summary judgment stage. OTDA contends that the district court's denial of its motion for summary judgment as to these three individual Defendants was erroneous. OTDA further argues that we have jurisdiction over this aspect of the district court's order.

9

On appeal from a district court's resolution of a request for an injunction, our review "extends to all matters inextricably bound up" with the injunction. *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 371 (2d Cir. 2004) (citation omitted). If a district court resolves a request for an injunction for the "same reasons" that it denies a party's motion for summary judgment, then we have jurisdiction to review the related summary judgment denial. *Id.* at 372.

Here, the district court issued the permanent injunction and denied OTDA's motion for summary judgment as to the three individual Defendants for the same reasons—namely, that there was no evidence that Plaintiff's speech actually disrupted OTDA's operations and therefore, OTDA's purported belief that Plaintiff's speech could disrupt OTDA's operations was unreasonable and incredible. But for the reasons explained above, we conclude that the district court reached this conclusion by misapplying the *Pickering* test. Accordingly, we also vacate the part of the district court's March 3, 2021 order in which the district court denied OTDA's motion for summary judgment seeking dismissal of the claims for monetary damages against Spitzberg, Schwenzfeier, and Devine.

\* \* \*

Because this case presents sensitive issues involving both Plaintiff's exercise of quintessential First Amendment rights and the ability of Defendants to effectively operate an agency whose actions affect the welfare of many New York citizens, we emphasize that we do not intend to suggest or imply in this Order a view as to the conclusion the district court should reach as to the issues raised in this litigation based upon a correct application of the *Pickering* test, as described above, and other applicable law.

For the foregoing reasons, we **VACATE** the order of the district court, and **REMAND** to the district court for further proceedings consistent with this summary order.  We also **VACATE** the permanent injunction of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court